**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| Nadezhda V. Wood, | CASE NO. _____ |
| Plaintiff | Judge: <br> Magistrate Judge: |
| v. | |
| Sergey Kapustin, Irina Kapustina, <br> Mikhail Goloverya, Global Auto, Inc., <br> G Auto Sales, Inc., Effect Auto Sales, <br> Inc., | **VERIFIED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |
| Defendants | |

## INTRODUCTION

Plaintiff Nadezhda "Nadia" Wood is a local Minnesota attorney originally born and raised in Russia. Still fluent in Russian, Nadia Wood took on the representation of Russian victims of an alleged international car sales fraud scheme in a case pending in the United States District Court for the Eastern District of New York, 13-civ-2479. The victims in that case are suing Sergey Kapustin, his wife Irina Kapustina, and Kapustins' son Mikhail Goloverya ("The Kapustins"), as presidents of Global Auto Inc., Effect Auto Sales, Inc., and G Auto Sales, Inc., respectively. The allegations are that the Kapustins advertise cars online, buyers wire the money, and then the Kapustins encounter inexplicable delays in delivery. The Kapustins then ask for even more money for an inferior vehicle, and desperate buyers oblige. In the end, most buyers receive no vehicles at all, nor do they get their money back. A few receive flooded or salvaged vehicles that were sold as "new" or "in good condition."

1

After the initial out-of-court negotiations on behalf of one of the victims with the Kapustins failed, Attorney Nadia Wood continued to gather information about the Kapustins' activities and companies through postings on a Russian online forum for the victims and by operating a website www.KapustinCars.com. This website featured Attorney Nadia Wood's logo and contact information.

Sergey Kapustin made several unsuccessful attempts to remove Nadia Wood's website KapustinCars.com. When these attempts proved futile, the Kapustins decided to try a different approach to stop this attorney from doing her job: they registered numerous websites with defamatory names that incorporate the words "Nadia Wood," copied Attorney Wood's logo without her permission, and uploaded the logo to their websites accompanied by defamatory statements accusing this attorney of engaging in criminal activity. Nadia Wood's logo and name are copyrighted and trademarked, respectively. The Kapustins' actions thus violate federal and state intellectual property laws, cybersquatting laws, and Minnesota's defamation laws. This lawsuit follows.

## TABLE OF CONTENTS

INTRODUCTION .................................................................. 1

TABLE OF CONTENTS ........................................................ 3

PARTIES ........................................................................... 4

JURISDICTION AND VENUE................................................ 5

BACKGROUND................................................................... 6

   Russian girl from Murmansk becomes an attorney in Minnesota ................. 6

   Russians from Nadia Wood's hometown buy a car in America; lose their money; Nadia Wood tries to help them............................. 8

   The Glazunovs were not the only victims ........................................ 9

   The investigation of the Kapustins by Nadia Wood continues  and the defamatory statements about her begin........................................ 11

   Nadia Wood owns and operates two websites that share the same look....... 12

   The defamatory statements escalate; copyright infringement begins ........... 15

CAUSES OF ACTION .......................................................... 19

   Count I: Copyright infringement of Nadia Wood's logo................................. 19

   Count II: Service Mark Infringement in Violation of the Lanham Act ........... 21

   Count III: Trade Dress Infringement in Violation of the Lanham Act............ 22

   Count IV: Service Mark Infringement in violation of Minn. Stat. § 333.28 ... 23

   Count V: Violations of Anticybersquatting Consumer Protection Act (ACPA) 23

   Count VI: Three violations of 15 U.S.C. § 1129, Cyberpiracy protections for individuals ................................................................ 25

   Count VII: Accusation of "money laundering" is Defamation Per Se............. 25

   Count VIII: Statement warning to "beware of blackmailer lawyer" is Defamation Per Se........................................................ 27

   Count IX: Accusations of "blackmail" and "racketeering," even in butchered English, are Defamation Per Se ................................. 28

   Count X: Domain Name NadiaWoodBlackmailer.com is Defamation Per Se. 29

   Count XI: Tortious Interference with Prospective Economic Advantage........ 29

COUNT XII: BASIS FOR DECLARATORY JUDGMENT TO CONTINUE TO OPERATE KAPUSTINCARS.COM ......................................... 30

PRAYER FOR RELIEF.......................................................... 33

Plaintiff Nadia Wood alleges as follows:

## PARTIES

1.      Nadia Wood is an individual and a licensed attorney in the State of Minnesota, with an office at 500 Laurel Ave., St. Paul, MN 55102.

2.      Sergey Kapustin, Irina Kapustina, and Mikhail Goloverya are all individuals residing at 137 Grasshopper Drive, Warminster, PA 18974. Sergey Kapustin and Irina Kapustina are husband and wife, and Mikhail Goloverya is Sergey's step-son from Irina's prior marriage.

3.      Global Auto, Inc., G Auto Sales, Inc., and Effect Auto Sales, Inc. are corporations registered in the State of New Jersey, with Sergey Kapustin, Mikhail Goloverya, and Irina Kapustina as their presidents, respectively. (Ex. 1, 2, 3.) The registered agent for all three corporations is Michael B. Campagna, attorney, with a business address at 277 N. Broad St., Elizabeth, NJ 07207.

4.      According to the Business Entity Information provided by the State of New Jersey, "Effect Auto Sales" is also an alternative name for Global Auto, Inc. (Ex. 1.) According to the same papers, in 2009, Irina Kapustina and Sergey Kapustin both signed Global Auto's corporate documents as "Presidents" of Global Auto, Irina in connection with using "Effect Auto" as alternative name, and Sergey in connection with also using "Auto Collection Group." (Ex. 1.)

5.      According to the Business Entity Information provided by the State of New Jersey, Global Auto's corporate status has been revoked in February of 2013 for failure to file annual report for 2 years (Ex. 1), making the officers personally liable for corporate obligations.

6. Individual Defendants are alter egos of the corporate entities and piercing the corporate veil is necessary to avoid injustice and fundamental unfairness.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this action under 17 U.S.C. §§ 101, *et seq.*, (the Copyright Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. § 1338(a) (actions arising under an Act of Congress relating to copyrights).

8. The Court also has supplemental jurisdiction over state law claims under 28 USC § 1367.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) because all Defendants do not reside in the same district and a substantial part of the events giving rise to the claims in this action occurred within this District. The original logo was created by a Minnesota artist and registered here in Minnesota; the website was designed by a Minnesota webdesigner and serviced here in Minnesota; Attorney Nadia Wood does business as a licensed attorney in Minnesota, and her business and reputation suffer here.

10. Alternatively, venue is proper in this district under 28 U.S.C. §§ 1391(b)(3) because there is no other district where this suit may be brought and the Court has personal jurisdiction over the Defendants in this district.

11. The Court has personal jurisdiction over the Defendants under the Minnesota's long-arm statute and because Defendants have sufficient contact

with the United States to satisfy due process clause of the Fifth Amendment: this is a federal question case, and thus, to satisfy requirements of due process, the defendants only need minimum contacts with the United States, not the State of Minnesota. The Defendants all reside or do business in the United States, therefore, they have sufficient contacts with the political unit encompassing the forum. In addition, Defendants infringed on a copyrighted logo owned by a Minnesota attorney, causing an injury in Minnesota. Therefore, Defendants should have reasonably anticipated being haled into court in Minnesota under the Minnesota's long-arm statute Minn. Stat. § 543.19, subd. 1(4), which allows to find jurisdiction over non-resident defendants who, being outside of Minnesota, cause injury in Minnesota.

12.     Alternatively, the Court has personal jurisdiction over defendants under *Calder v. Jones*, 465 U.S. 783 (1984). Defendants made a purposeful action by copying and displaying Nadia Wood's logo with Minnesota phone number and address on their defamatory website, their actions were expressly aimed at the attorney with business practice in the State of Minnesota, and Defendants knew that the brunt of the impact of their actions will be felt in Minnesota.

## BACKGROUND

### Russian girl from Murmansk becomes an attorney in Minnesota

13.     Nadia Wood was born and raised in Murmansk, Russia, and still speaks, reads, and writes fluent Russian. She came to the United States for college, earned two Bachelor Degrees and a Certified Public Accountant license,

and stayed to live and work in this country, eventually earning her U.S. citizenship granted in 2009 by The Honorable Joan N. Ericksen in the United States District Court for the District of Minnesota.

14.     After years of practice as a CPA in public and private accounting, Nadia Wood decided to become an attorney. Nadia Wood attended the University of Minnesota Law School, served as a Managing Editor of the *Minnesota Law Review*, and upon graduation and admission to the Minnesota Bar in 2010 established a law practice in St. Paul, practicing as a solo attorney under her name as Nadia Wood, attorney at law.

15.     Nadia Wood advertises her services as an attorney on a website registered and operated by her, www.NadiaWood.com.

16.     Nadia Wood's law practice is focused on business litigation and appeals, as well as writing major motions for other attorneys. Nadia Wood is admitted in numerous federal district courts, she has appeared and argued cases before several federal Circuit Courts of Appeals. She has never been a subject to an ethics inquiry or reprimand, either as an attorney or as a Certified Public Accountant, which is also a position of public trust subject to strict ethical regulations. Nadia Wood has demonstrated her commitment to the public, the courts, and the legal community by serving on appellate Criminal Justice Act (CJA) panels for the Eighth and Sixth Circuits, with four current active CJA appointments as of this date; by becoming involved with the Federal Bar Association; and by teaching Legal Writing at the University of Minnesota Law School.

**Russians from Nadia Wood's hometown buy a car in America;
lose their money; Nadia Wood tries to help them**

17.     Igor Glazunov and Irina Glazunova are Russian citizens residing in Russia in Nadia Wood's hometown. They purchased a vehicle from G Auto Sales, Inc. on the Internet. They wired $36,920 to G Auto's account in January of 2013 as a payment on an invoice signed by Mikhail Goloverya, but did not receive a vehicle. (Ex. 4.) After their attempts to negotiate either receipt of a vehicle or return of their money on their own failed, the Glazunovs then hired Nadia Wood as their attorney to negotiate the return of funds and to file a suit against G Auto if necessary.

18.     After being hired by the Glazunovs as their attorney, Attorney Nadia Wood sent two demand letters on the Glazunovs' behalf, all on her letterhead using her logo. The first letter was sent on February 20, 2013, to Michael B. Campagna as a registered agent of G-Auto and copied to Mikhail Goloverya, as President of G Auto Sales. (Ex. 5.)

19.     A few days later, on February 25, 2013, Attorney Nadia Wood received a phone call from Sergey Kapustin, claiming to negotiate on Mikhail Goloverya's behalf. Asked how was he related to G Auto and Mikhail Goloverya, Sergey Kapustin responded that he was teaching Goloverya "how to do business." Sergey Kapustin did not disclose whether he was represented by counsel and, to the best of Nadia Wood's knowledge, was not represented by counsel at that time.

20.     Sergey Kapustin demanded that an email be sent to him at the email address sales@globalautousa.com requesting the return of the money in

the name of the Glazunovs. Attorney Nadia Wood sent him an email the same day, forwarding, with their permission, her clients' letter requesting the refund. Attorney Nadia Wood did not send this email, or her client's letter, to anyone other than Sergey Kapustin at the email address sales@globalautousa.com. Attorney Nadia Wood requested that all further communications be sent to her, and not to the Glazunovs. (Ex. 6.)

21.    Sergey Kapustin responded by emailing the Glazunovs directly and asking the Glazunovs to send him more money for a different vehicle. No offers to settle the case followed.

22.    Attorney Nadia Wood then sent a second demand letter (Ex. 7) on March 14, 2013, accompanied by a litigation hold letter. (Ex. 6.) These letters were mailed to Michael Campagna, Sergey Kapustin, Irina Kapustina, and Mikhail Goloverya. For months, no offers to settle followed.

23.    To date, the Glazunovs have not received the car they purchased.

### The Glazunovs were not the only victims

24.    In the meantime, Igor Glazunov discovered that his experience with the Kapustins was far from unique. He started an online forum on a Russian site VK.com, an equivalent of LinkedIn and Facebook, for the victims of G Auto Sales, Global Auto, and Effect Auto, companies operated by the Kapustins. Today, there are over 300 participants in the forum. (VK Group Отдел по борьбе с GlobalAutoUsa, http://vk.com/club46391372, last accessed June 17, 2013.) Many victims shared personal experiences similar to that of the Glazunovs: many have wired money and received no car at all; others have

wired the money, and after weeks or months of delay, were asked to send more money for a different vehicle; a few have eventually received cars with titles marked "flooded" or "salvage" despite being sold as clean and even new.

25.     Attorney Nadia Wood also discovered a consent judgment entered into by the New Jersey Attorney General against Global Auto and its agents and managers (the Kapustins) for defrauding New Jersey residents. http://www.nj.gov/oag/ca/press/GlobalAutoIncDBAautoCollectionGroup.pdf, last accessed June 17, 2013.

26.     Attorney Nadia Wood also discovered numerous pending actions in various courts against defendants by individuals alleging similar violations of the New Jersey Consumer Fraud Act, unjust enrichment, civil RICO, Truth-in-Consumer Contract, Warranty and Notice Act, violations of Fair Credit Reporting Act, and other claims. These cases go back a number of years, indicating a pattern of fraudulent activities and inability on the part of the defendants to comply with laws or the terms of the consent judgment.

27.     The Glazunovs—Nadia Wood's clients—also discovered that the car they believed they had purchased from G Auto Sales in January had been previously sold in the United States at an auction to another Russian buyer. The Glazunovs located the buyer using the VIN number; the buyer told them he had never heard of the Kapustins or their companies, and that he has been driving the car for months in Russia. The buyer sent the Glazunovs a photo of "their" vehicle from a town eight time zones away from where the Kapustins were claiming the car was located at the time of "sale." The Glazunovs shared

their findings publicly on March 20, 2013, on the online forum for the victims
on VK.com.

### The investigation of the Kapustins by Nadia Wood continues and the defamatory statements about her begin

28.    Sergey Kapustin knew about the forum for the victims and even
posted there under his own account as "Sergey Kapustin" on at least one
occasion, March 14, 2013. Upon information and belief, Sergey Kapustin was
removed as a forum member or left the group voluntarily, because he is no
longer listed as a group member.

29.    Shortly thereafter, someone posted on the VK.com forum under a
name Anna Kirova on May 9, 2013 claiming that Nadia Wood was not an
attorney and that Igor Glazunov was attempting to launder money by asking to
return the money in the United States through Nadia Wood. This person copied
and pasted not only the email Nadia Wood sent to the Kapustins requesting the
refund, but the entire thread of correspondence between the Glazunovs and G
Auto Sales going back to January of 2013.

30.    Upon information and belief, Anna Kirova's account was used by
the Kapustins to post these statements because the quoted emails were
exchanged only between Nadia Wood and the Kapustins, or the Glazunovs and
the Kapustins, at the address sales@globalautousa.com. The emails were not
forwarded to anyone else and neither Nadia Wood nor the Glazunovs know
Anna Kirova or have access to her account. Upon information and belief,
discovery from VK.com will show that either Anna Kirova's account was
accessed by Defendants or that it was created by Defendants.

31.     In the meantime, Attorney Nadia Wood started her own website to collect the information from victims. The purpose of collecting this information—per Glazunovs' request and with permission of each person who contacts Nadia Wood—was to alert law-enforcement organizations about the possible commission of the federal crimes of wire fraud and tax evasion by the Kapustins. The URL of the website is www.KapustinCars.com.

## Nadia Wood owns and operates two websites that share the same look

32.     The KapustinCars website shares the same logo and header as the main professional site registered and operated by Nadia Wood, www.NadiaWood.com. Nadia Wood also uses the same image on her business cards. The copyright to this logo belongs to Nadia Wood, with registration # 1-948933351 pending with United States Copyright Office.



**Illustration 1: Copyrighted Nadia Wood Logo, USCO # 1-948933351.**

33.     Attorney Nadia Wood has common law trademark rights in her name since she has been using it as a service mark extensively and prominently in interstate commerce since 2010.

34.   Nadia Woods owns registration to the service mark "Nadia Wood" registered with the State of Minnesota.

35.   Nadia Wood also owns a pending application for federal registration of service mark "Nadia Wood," serial # 85958442.

36.   Nadia Wood has not given permission to anyone else to use her logo or service mark.

37.   Nadia Wood employs a distinctive trade dress in design and layout of her websites NadiaWood.com and KapustinCars.com that is consistent with her letterhead and business cards and other printed materials and that is recognized and associated with Nadia Wood by her clients and potential clients. Nadia Wood claims common law trade dress rights in the appearance of her websites NadiaWood.com and KapustinCars.com.

38.   The KapustinCars website asks people who wired money to the Kapustins and who are interested in contributing their stories to the investigation to contact Attorney Nadia Wood. The email address provided for this purposes is InvestigateKapustin@gmail.com. A link to www.KapustinCars.com has been posted on the forum for the victims.

[ the remainder of this page is deliberately left blank ]



**Illustration 2: www.KapustinCars.com website seeking information on business activities of the Kapustins and their entities.**

39.     Barely two weeks after www.KapustinCars.com was created on May 11, Nadia Wood received a phone call from Greg Prosmushkin on May 21, an attorney in Philadelphia, who claimed to be representing Sergey Kapustin and negotiating on behalf of G Auto in the Glazunovs matter. This was the first time Nadia Wood learned that Greg Prosmushkin represented the Kapustins. During the phone conversation, Prosmushkin mentioned that he had read the demand letters Nadia Wood sent on the Glazunovs behalf and that he had seen her logo.

40.     Thereafter, Sergey Kapustin made several attempts to shut down the KapustinCars website, first by claiming abuse himself (Ex. 9), and then by issuing a takedown notice under The Digital Millennium Copyright Act (DMCA) through another attorney. The webhost provider for Nadia Wood reviewed KapustinCars.com website and found no violations of the Terms of Service, DMCA, or any other laws, and refused to shut down the website. (Ex. 10.)

**The defamatory statements escalate; copyright infringement begins**

41.   On May 25, the day after filing a complaint with the web hosting company for KapustinCars.com, Global Auto USA registered domain names NadiaWoodBlackmailer.com and NadiaWoodLaw.com. Entering either website address in the browser redirects the user to NadiaWood.net, which is registered anonymously. (Ex. 11, 12, 13.) These three domains are hereinafter referred to as "Subject Domain Names."

42.   Upon information and belief, all three websites were registered and are now controlled by Defendants. The basis of the Plaintiff's belief is that the registrants name for two of the domain names is "Global Auto USA" (Ex. 11, 12.) GlobalAutoUSA.com is the name of a website used by the Kapustins to sell their cars. These domain names were registered at the same time as Sergey Kapustin filed his first "abuse" complaint with Nadia Wood's webhost provider. The email address prominently displayed on NadiaWood.net is modeled after InvestigateKapustin@gmail.com that Nadia Wood uses on her KapustinCars.com website. In addition, as discussed below, the defamatory website NadiaWood.net uses phonetically-spelled Russian words.

[ the remainder of this webpage is deliberately left blank ]

43.     The defamatory NadiaWood.net website displays Nadia Wood's copyrighted logo. The website displays the same image as used on the legitimate website KapustinCars.com, but the image was altered to add the email address, InvestigateNadiaWood@gmail.com. This email address is modeled after InvestigateKapustin@gmail.com address used by Attorney Nadia Wood for information-gathering purposes in her ongoing investigation of the Kapustins' business practices. The defamatory website also copied the black header from the KapustinCars.com website, complete with the business address, phone number, and fax. The defendants, however, removed the InvestigateKapustin@gmail.com contact link in the header.



**Illustration 3: Header and copyrighted Nadia Wood logo as they appear in a single image Nadia_Wood_logo.jpg on www.KapustinCars.com.**



**Illustration 4: Copyrighted Nadia Wood logo is copied, altered, and displayed on the defamatory website www.NadiaWood.net.**

16

44.     The defamatory NadiaWood.net website also advises readers to "Beware of Blackmailer Lawyers of NadiaWood.com." And instead of "Legal Writing, Litigation, and Appeals" as written on the header of Nadia Wood's original website, the defamatory website has "blackmail, chantage, racket." Although the defamatory website with infringing content is replete with poor grammar and spelling, e.g., "Did you paid money to Nadia Wood?", "chantage" and "racket" are not misspellings. Rather, "chantage" phonetically spells Russian word "шантаж," which translates as "blackmail." And the word "racket" does not imply that Nadia Wood plays tennis; rather, it is another phonetically spelled Russian word "рэкет," which also translates as blackmail or racketeering.



**Illustration 5: Copyrighted Nadia Wood logo copied, altered, and displayed on the defamatory website www.NadiaWood.net along with defamatory statements falsely accusing Nadia Wood of committing crimes of blackmail and racketeering with visitor statistic counter displaying 1,632 views.**

45.    The original NadiaWood.com website has a copyright notice at the bottom of every page, below the navigation bar:



**Illustration 6: Copyright notice at the bottom of NadiaWood.com website below the navigation bar.**

46.    On the defamatory website NadiaWood.net, the copyright notice has been altered, with the copyright symbol removed, but the name and the address of the original website NadiaWood.com remain:



**Illustration 7: Copyright notice minus the copyright symbol at the bottom of the defamatory NadiaWood.net website.**

[ the remainder of this page is intentionally left blank ]

## CAUSES OF ACTION

## Count I: Copyright infringement of Nadia Wood's logo

47.    Plaintiff Nadia Wood hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

48.    At all times relevant hereto, Nadia Wood has been the author and owner of the logo at issue in this action (see Illustration 1.) She has never licensed it or granted any other person permission to use it.

49.    This logo is a visual work of art and it has an application for registration pending in the United States Copyright Office, case 1-948933351.

50.    Upon information and belief, Defendants, without Plaintiff's authorization or license, intentionally downloaded the logo from the Attorney's website, copied it, uploaded it to their websites, and published it on the Internet, accompanied by defamatory statements, on a website controlled and operated by Defendants, NadiaWood.net.

51.    Plaintiff's information and belief is based on the fact that even though the domain name NadiaWood.net is registered anonymously, the domain names registered to Global Auto redirect to this website. Meaning, upon typing URL addresses NadiaWoodLaw.com or NadiaWoodBlackmailer.com into a web browser, which are both domain names registered to Global Auto, NadiaWood.net site appears. Further, the email address used on the website "InvestigateNadiaWood@gmail.com" is similar to

"InvestigateKapustin@gmail.com" and the phonetically-spelled Russian words also indicate the Kapustins are the culprit behind the website.

52.     Defendants' conduct infringes upon Nadia Wood's exclusive rights of reproduction, distribution, and display that are protected under the Copyright Act.

53.     Defendants knew or had constructive knowledge that their acts constituted copyright infringement. Defendants have previously hired an attorney to file a request to remove content from www.KapustinCars.com under The Digital Millennium Copyright Act (a DMCA takedown notice). This demonstrates awareness of copyright laws and available remedies. Defendants also observed the copyright symbol at the bottom of each page of Nadia Wood's professional website accompanied by words "2013 Nadia Wood," removed the symbol, but left "2013 Nadia Wood." The extra effort spent on creating faux-copyright mark on the defamatory website is indicative of the defendants' knowledge of the copyright notices and protects, and willfulness and maliciousness of their actions.

54.     Defendants' conduct was willful within the meaning of the Copyright Act: intentional, and with indifference to the Plaintiff's rights.

55.     Nadia Wood hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement up to $150,000 per violation, in lieu of seeking recovery of actual damages.

56.     As Defendants' infringement was intentional and willful, Nadia Wood is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**Count II: Service Mark Infringement
in Violation of the Lanham Act**

57.     Plaintiff Nadia Wood hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

58.     Nadia Wood uses her name in connection with providing legal services as an attorney. Upon information and belief, Defendants created websites that use Nadia Wood's name in a way that is likely to cause confusion as to affiliation and origin of the website. The confusion is further compounded by the fact that the defamatory website NadiaWood.net uses the address of the legitimate website NadiaWood.com in the header (see illustration 8 below) and includes the words "2013 NadiaWood" at the bottom, along with a listing of NadiaWood.com among other domain names registered to Global Auto and other anonymous entities that do not belong to and are not operated by Nadia Wood (see illustration 7 on page 16).



**Illustration 8: Defamatory website NadiaWood.net displays
NadiaWood.com as the name of the website in the title**

59.     By these actions, Defendants have violated 15 U.S.C. § 1125(a).

**Count III: Trade Dress Infringement
in Violation of the Lanham Act**

60.     Plaintiff Nadia Wood hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

61.     Both the original NadiaWood.com website and KapustinCars.com website share the same distinctive and non-functional elements that comprise trade dress which identifies Attorney Nadia Wood as the source of the information:

   a)  In the upper left corner, an image of a woman holding a pen, with signature "Nadia Wood" bellow the image, partially overlaying a black header spanning from left to right;

   b)  A gold lettering above the black header;

   c)  Dark red background;

62.     The defamatory site NadiaWood.net features the same trade dress elements in its website layout and design, creating a likelihood of cause confusion and mistake regarding the ownership of the website, and deceiving visitors as to the affiliation, connection, or association of NadiaWood.net with NadiaWood.com and KapustinCars.com.

63.     By these actions, Defendants have violated 15 U.S.C. § 1125(a).

## Count IV: Service Mark Infringement
## in violation of Minn. Stat. § 333.28

64.     Plaintiff Nadia Wood hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

65.     The words "Nadia Wood" are service mark as defined in Minn. Stat. § 333.18 and are registered as such with the State of Minnesota pursuant to provisions of Minn. Stat. § 333.20 et seq.

66.     Upon information and belief, the websites operated by Defendants use the service mark "Nadia Wood" without permission, in a way that is likely to cause confusion to the readers of the website as to affiliation and origin of the website and services offered. The confusion is further compounded by the fact that the defamatory website NadiaWood.net uses the address of the legitimate website NadiaWood.com in the header (see illustration 8), and includes the words "2013 NadiaWood" at the bottom, along with a listing of NadiaWood.com among other domain names registered to Global Auto and other anonymous entities that do not belong and are not operated by Nadia Wood (see illustration 7).

67.     By these actions, Defendants' have violated Minn. Stat. § 333.28.

## Count V: Violations of Anticybersquatting
## Consumer Protection Act (ACPA)

68.     Plaintiff Nadia Wood hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

23

69.     Nadia Wood has service mark rights in her name used in connection with providing her legal services. This service mark is protected by the common law rights, by the provisions of the Minn. Stat. § 333.18 et seq., and by numerous federal laws.

70.     Upon information and belief, Defendants, in bad faith, registered three websites that are either identical or confusingly similar to the personal name used as a distinctive service mark by Nadia Wood. Upon information and belief, Defendants registered NadiaWood.net, which is identical except for the domain suffix to NadiaWood.com, the original website used by Nadia Wood in her business of practicing law. Upon information and belief, Defendants also registered other domain names, which are substantially and confusingly similar to the original.

71.     Upon information and belief, Defendants profit from these domain names by diverting searches and business inquires directed to Nadia Wood to their own website and by diminishing her ability to retain clients because of the damage to her reputation and business done by the statements on the websites.

72.     By these actions, Defendants have violated Anticybersquatting Consumer Protection Act (ACPA),15 U.S.C. § 1125(d).

73.     Nadia Wood hereby reserves the right, pursuant to 15 U.S.C. § 1117(d) to elect to recover statutory damages for each of the domain names up to $100,000 per domain name, in lieu of seeking recovery of actual damages.

### Count VI: Three violations of 15 U.S.C. § 1129,
### Cyberpiracy protections for individuals

74.    Plaintiff Nadia Wood hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

75.    Upon information and belief, Defendants registered the domain name NadiaWood.net, which consists entirely of Nadia Wood's name, and other domain names that are substantially and confusingly similar thereto. These actions were done without Nadia Wood's consent, and, upon information and belief, with intent to profit for sale of these domain names in violation of 15 U.S.C. § 1129.

### Count VII: Accusation of "money laundering"
### is Defamation Per Se

76.    Plaintiff Nadia Wood hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

77.    Upon information and belief, Defendants made statements on a public forum for the victims of their fraudulent activities designed to discredit Nadia Wood as an attorney and accused her of engaging in illegal activity of "money laundering." The forum at this time has over 300 members. An unknown number of other people, besides registered participants, read the forum.

78.    At the time the statements were made, Defendants knew that the statement that Nadia Wood is not an attorney was false. They had received two

demand letters on attorney's letterhead from Nadia Wood and litigation hold letters on the same letterhead. Sergey Kapustin made at least one phone call to discuss a possible settlement. Defendants also knew that a demand of money for the car that was never sent to the Glazunovs was not an attempt to launder money, but an attempt to recover money for damages suffered by the Glazunovs from a breach of contract by G Auto.

79.     Despite the fact that the statement came from a person under a name that does not appear to be one of the defendants, Anna Kirova, the posting included correspondence from Attorney Nadia Wood to Sergey Kapustin addressed to sales@globalautousa.com per Kapustins's request. The posting also included many other emails from the Glazunovs—Nadia Wood's clients—to Global Auto. Only Global Auto, its agents, or managers could have accessed that correspondence. Further, an attempt to view the profile of Anna Kirova results in a message that the site administrators "have detected suspicious activity on Anna's profile and temporarily suspended it to prevent further damage." (Anna Kirova's profile page, http://vk.com/id102792418, last accessed June 17, 2013.)

80.     Upon information and belief, Defendants either hijacked Anna Kirova's account or created a false identity to post defamatory statements about Nadia Wood and her client.

81.     Upon information and belief, the Kapustins targeted their former compatriots with their fraudulent scheme, knowing that many of them do not speak English and do not have ready access to American courts to vindicate

their rights. A Russian-speaking attorney licensed to practice law in the United States would be able to help and advise these victims of their rights. Statements by Defendants that Nadia Wood is not an attorney and is engaged in money laundering lower her reputation and hurt her estimation in the eyes of the potential clients she is trying to help.

82.     These statements affect Attorney Nadia Wood in her business and profession and therefore are defamation per se under Minnesota common law. Nadia Wood is in the business of practicing law; statements that she is not an attorney and that she has engaged in illegal activity are designed to deter potential clients from contacting her about her litigation or for assistance with contacting law-enforcement authorities.

### Count VIII: Statement warning to "beware of blackmailer lawyer" is Defamation Per Se

83.     Plaintiff Nadia Wood hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

84.     The statement on NadiaWood.net warning to "Beware of Blackmailer Lawyers of NadiaWood.com" is a false accusation that Nadia Wood is engaged in criminal activity.

85.     Defendants knew or should have known that settlement letters are not blackmail. They are now represented by competent counsel Greg Prosmushkin who, in a phone conversation with Nadia Wood on May 21, 2013, has stated that he read demand letters Nadia Wood sent on the Glazunovs' behalf and that he had seen her letterhead.

86.    The statement "Beware of Blackmailer Lawyers of NadiaWood.com" is published on an Internet website accessible to the general public. The visitor statistics counter on the webpage suggests that the page has received 1,632 views.

87.    These statements affect Attorney Nadia Wood in her business and profession and falsely accuse Nadia Wood of committing a crime, and therefore are defamation per se under Minnesota common law.

### Count IX: Accusations of "blackmail" and "racketeering," even in butchered English, are Defamation Per Se

88.    Plaintiff Nadia Wood hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

89.    The words "blackmail," "chantage," and "racket" appearing on the defamatory website NadiaWood.net are all false statements accusing Nadia Wood of committing a crime of blackmail and designed to hurt Nadia Wood's professional reputation and business.

90.    These statements are made on a website accessible by anyone with an Internet connection. The visitor statistics counter on the webpage suggests that the page has received 1,632 views.

91.    These statements are defamation per se under Minnesota law.

## Count X: Domain Name NadiaWoodBlackmailer.com
## is Defamation Per Se

92.     Plaintiff Nadia Wood hereby incorporates by reference each and

every allegation contained in the preceding paragraphs as if fully set forth fully

herein.

93.     The domain name NadiaWoodBlackmailer.com which sends the

user to NadiaWood.net, which, in turns, urges website visitors to "Beware of

Blackmailer Lawyers of NadiaWood.com" is a false statement about Nadia

Wood in her professional capacity as attorney which hurts her business and

reputation, in addition to being a false accusation of committing a crime. This

domain name itself is defamation per se.

## Count XI: Tortious Interference with
## Prospective Economic Advantage

94.     Plaintiff Nadia Wood hereby incorporates by reference each and

every allegation contained in the preceding paragraphs as if fully set forth fully

herein.

95.     Defendants are intentionally and improperly interfering with Nadia

Wood's prospective contractual relations with her clients by inducing or

otherwise causing potential clients not to enter into or continue the prospective

relation with Nadia Wood as their attorney and by preventing Nadia Wood from

acquiring or continuing the prospective relation.

**COUNT XII: BASIS FOR DECLARATORY JUDGMENT
TO CONTINUE TO OPERATE KAPUSTINCARS.COM**

96.     Plaintiff Nadia Wood hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

97.     The website KapustinCars.com displays two pictures of the billboards posted by EffectAuto and Global Auto in Finland taken by the victims of their scheme and a partial image of an invoice which shows Goloverya's signature.

98.     The website KapustinCars.com asks the readers the following question: "Did you wire money to Global Auto, G-Auto Sales, Effect Auto, or Sergey Kapustin to purchase a car, a motorcycle, or a boat?"

99.     The website then goes on to state, in both Russian and English: "My name is Nadia Wood. I am an attorney with a law practice in the United States investigating business practices of Sergey Kapustin and his known associates, Irina Kapustina and Mikhail Goloverya. If you wired money to any of the following companies: Global Auto, Effect Auto, or G-Auto Sales for purchase of a purchase of a car, motorcycle, or a boat, please fill out this form in either Russian or English, notarize it, scan it, and email it to me with supporting documents to InvestigateKapustin@gmail.com. By sending me this form and supporting documents, we are NOT creating an attorney-client relationship. I am not your attorney, you are not my client, and I do not represent you in any court of law. At this point, I am only gathering information." KapustinCars.com, last accessed June 17, 2013.

100.   The KapustinCars.com website also posts three pictures of the G Auto's offices below a sentence in Russia that reads "They say a picture is worth a thousand words. Here are three thousand words about the office of G-Auto Sales, located at 150-1 Carriage Lane, Delran, NJ (click to enlarge)." One of the photos was taken from the outside; the other two, of the interior, through the glass door of the office.



**Illustration 9: Photos of the offices of G Auto Sales at 150-1 Carriage Lane, Delran, NJ posted on KapustinCars.com.**

101.   In contrast, the Kapustins display an image of skyscrapers next to their office address at 150-1 Carriage Lane, Delran, NJ and other contact information on the Global Auto website:



**Illustration 10: Global Auto's "Contact Us" page along with an image of skyscrapers next to their address at 150-1 Carriage Ln., Delran, NJ.**

102.   The photos of a real G Auto's office on KapustinCars.com are followed by another sentence, which states, in Russian: "And here's another thousand about the Kapustin's house" followed by a photo of the Kapustins' house. The photo is obviously taken from a public road, as evidenced by the curb and the mailbox in the foreground.



**Illustration 11: Photo of the Kapustin's house posted on KapustinCars.com.**

103.   No other statements, comments, or remarks about the Kapustins appear on the website.

104.   Shortly before this complaint was filed, the Kapustins through their attorney Greg Prosmushkin sent Nadia Wood a demand that she shut down the KapustinCars.com website. According to their attorney, "[t]his letter constitutes a demand for immediate retraction in writing of these false and libelous statements. My clients further demand that your retraction and

correction be accompanied by an editorial in which you specifically repudiated your libelous statements." (Ex. 14.) They also accuse Nadia Wood of violation of privacy. (*Id.*)

105.   Greg Prosmushkin's letter does not dispute that the photos are fair and accurate depictions of either the office of G Auto or the Kapustins' house. (*Id.*) Rather, the Kapustins through their attorney contend that by posting four pictures together on the same webpage without commentary Nadia Wood "consistently and falsely connect[s] photos of our client's office and private residence as proof that he is not legitimate." (*Id.*)

106.   Continued existence of KapustinCars.com and the content of the website create a case and controversy between the parties and therefore, Nadia Wood asks this Court to enter a declaratory judgment on this issue under 28 U.S.C. § 2201 and order a speedy hearing on this issue under Fed. R. Civ. P. 57.

## JURY DEMAND

107.   Plaintiff hereby demands a jury trial in this case.

## PRAYER FOR RELIEF

**WHEREFORE**, Nadia Wood respectfully requests Judgment and relief as follows:

1)   A declaratory judgment that (1) the content of KapustinCars.com is not defamatory and photographs of office space and a house taken from a public sidewalk are not an invasion of privacy, (2) Nadia Wood is allowed to continue to use of photographs of offices and

other properties that belong to Defendants as long as the images
are taken from spaces accessible to the general public; and (3)
Nadia Wood is allowed to continue to operate KapustinCars.com
for information-gathering purposes.

2)   Entry of preliminary and permanent injunctions enjoining
Defendants, their agents, representatives, servants, employees,
and all those acting in concert or participation with from copying,
displaying, and otherwise using Nadia Wood's logo; from infringing
on Nadia Wood's service mark and trade dress; from registering
domain names using the trademarked words "Nadia Wood" or
domain names substantially similar to the original website
NadiaWood.com; and from making disparaging statements about
Nadia Wood.

3)   Entry of an Order that, upon Nadia Wood's request, those in privity
with Defendants and those with notice of the injunction, including
any Internet search engines, Web hosts, domain-name registrars
and domain-name registries or their administrators that are
provided with notice of the injunction, cease facilitating access to
any or all domain names and websites through which Defendants
engage in defamatory statements or infringe copyright,
trademarks, and service marks of Nadia Wood.

4)   Entry of an Order that, upon Nadia Wood's request, the top level
domain (TLD) Registries for the Subject Domain Names in this case

34

and their administrators redirect Subject Domain Names to the legitimate website NadiaWood.com and then place the Subject Domain Names on REGISTRY-HOLD status, thus removing them from the TLD zone files maintained by the Registries which link the Subject Domain Names to the IP addresses where the associated websites are hosted and preventing further modifications to the Subject Domain Names.

5)   Entry of an order canceling or, at Nadia Wood's election, transferring the Subject Domain Names and any other domain names used by Defendants to engage in copyright or service mark infringement or defamation of Nadia Wood to Nadia Wood's control so they may no longer be used for illegal purposes.

6)   Entry of an order that, upon Nadia Wood's request, the Internet Corporation for Assigned Names and Numbers ("ICANN") shall take all actions necessary to ensure that the top level domain Registries responsible for the Subject Domain Names transfer or disable the Subject Domain Names as directed by the Court.

7)   Judgment in favor of Nadia Wood against the Defendants for actual damages or statutory damages pursuant to 17 U.S.C. § 504 up to $150,000 per each violation, at the election of Plaintiff, in an amount to be ascertained at trial;

8)   Judgment in favor of Nadia Wood against the Defendants for actual damages or statutory damages pursuant to 15 U.S.C. § 1117(d) up

to $100,000 per each domain name, at the election of Plaintiff, in an amount to be ascertained at trial;

9) Judgment in favor of Nadia Wood against the Defendants for damages for defamatory statements in an amount to be ascertained at trial;

10) Judgment in favor of Nadia Wood against the Defendants on all other causes of actions and damages in an amount to be ascertained at trial;

11) Judgment in favor of Nadia Wood against the Defendants awarding the Plaintiff attorneys' fees, litigation expenses (including fees and costs of expert witnesses), investigative fees, and other costs of this action;

12) Further relief as the Court may deem just and proper.

Respectfully submitted,

*/s Nadia Wood*

Nadia Wood, Attorney at Law (#391334)

500 Laurel Avenue,
Saint Paul, MN 55113
Phone: (612) 568-5298
Fax: (651) 344-0870
Email: Law@NadiaWood.com

**Pro Se Plaintiff**

## VERIFICATION

Nadezhda "Nadia" Wood, being first duly sworn upon oath, deposes and states that she is Plaintiff in this action; that she has read the foregoing Complaint, knows the contents thereof; and that the same is true and correct, except as to those matters therein stated on information and belief, and as to those matters she believes them to be true.

_Nadia Wood_

Nadezhda "Nadia" Wood, Plaintiff

Subscribed and sworn to before me
this 18 day of June, 2013.

County of Ramsey, State of Minnesota

Notary Public

GRANT SCOTT SMITH
NOTARY PUBLIC-MINNESOTA
My Commission Expires
January 31, 2016