UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-1495(DSD/AJB)

Nadezhda V. Wood,

                    Plaintiff,

v.                                                        **ORDER**

Sergey Kapustin, Irina Kapustina,
Mikhail Goloverya, Global Auto,
Inc., G Auto Sales, Inc., Effect
Auto Sales, Inc.,

                    Defendants.


     Nadezhda V. Wood, Esq., 500 Laurel Avenue, St. Paul, MN
     55102.

     Nicholas M. Wenner, Esq., Boris Parker, Esq. and Parker
     & Wenner, 100 South Fifth Street, 2100 Fifth Street
     Towers, Minneapolis, MN 55402, counsel for defendants.


     This matter is before the court upon the motion for temporary

restraining order and preliminary injunction by plaintiff Nadezhda

V. Wood.  Based on a review of the file, record and proceedings

herein, and for the following reasons, the court grants the motion

for preliminary injunction.[1]


                              **BACKGROUND**

     This dispute arises out of Wood's representation of nonparties

Igor Glazunov and Irina Glazunova (collectively, nonparty

plaintiffs) in an unrelated matter.  Wood is an attorney practicing

_____

     [1] At oral argument, the court informed Wood that it would
construe the motion as one for preliminary injunction.

in St. Paul, Minnesota.  Ver. Compl. ¶ 14.  Wood represents the nonparty plaintiffs in an action currently pending in the Eastern District of New York.  Id. ¶ 18.

In January 2013, the nonparty plaintiffs, who are Russian citizens, wired money to defendant G Auto Sales, Inc. (G Auto) as payment for an automobile.  Id. ¶ 17.  After the nonparty plaintiffs failed to receive the vehicle, Wood sent demand letters to G Auto and defendant Mikhail Goloverya, as President of G Auto. Id. ¶¶ 17-18.  Defendant Sergey Kapustin responded to the demand letter, claiming to be negotiating on behalf of Goloverya.  Id. ¶ 19.  Kapustin asked Wood to email him at sales@globalautousa.com. Wood complied but, to date, has been unsuccessful in obtaining the vehicle or a refund.  Id. ¶ 23.

Thereafter, Glazunov posted on an online forum about his transaction with G Auto.  Id. ¶ 24.  Several other forum users shared similar experiences regarding transactions with G Auto Sales, defendant Global Auto, Inc. (Global Auto) and defendant Effect Auto Sales, Inc. (Effect Auto).  Id.  After being alerted to the additional posts on the forum, Wood started a website, KapustinCars.com, in order to collect information from individuals claiming to be victimized by defendants.  Id. ¶ 32.

2

KapustinCars.com includes a header and logo[2] depicting Wood's name and likeness.  Id.  Wood uses the same header and logo on her law firm's website, NadiaWood.com.[3]

Wood posted a link to KapustinCars.com on the online forum. Id. ¶ 38.  Thereafter, Kapustin issued a takedown notice for KapustinCars.com, pursuant to the Digital Millennium Copyright Act (DMCA).  Id. ¶ 40.  The website's host reviewed the takedown notice, found no violation of the DMCA and declined to take further action.  Id.

In response, Global Auto registered the domain names NadiaWoodBlackmailer.com and NadiaWoodLaw.com.  Id. ¶ 41.  Each website redirects to NadiaWood.net, an anonymously-registered domain.  Id.  At the time Wood filed suit, NadiaWood.net displayed Nadia Wood's logo and business address and included the header

---

[2] Wood asserts that she has a copyright application pending with the United States Copyright Office for this logo.  Ver. Compl. ¶ 32.

[3] Wood practices under the name "Nadia Wood."  Ver. Compl. ¶ 14.

"InvestigateNadiaWood@gmail.com."[4]   Id. ¶ 43.   The page read: "Nadia Wood Blackmail, Chantage,[5] Racket[.]   Did you paid [sic] money to NadiaWood.com, or Nadia Wood?   Investigate Nadia Wood ... Beware of Blackmailer Lawyers of NadiaWood.com."   Id. ¶ 44.

On June 19, 2013, Wood filed suit, alleging claims for (1) copyright, trade dress and service mark infringement; (2) violations of the Anticybersquatting Consumer Protection Act (ACPA); (3) cyberpiracy violations under 15 U.S.C. § 1129; (4) defamation; and (5) tortious interference with prospective economic advantage.   On that same day, Wood moved for a temporary restraining order and preliminary injunction, seeking a court order that the web host redirect the infringing websites pending trial.

A hearing on the request for injunctive relief was held on July 8, 2013.   Defendants failed to appear at the hearing, and the court ordered that they respond within ten days.   See ECF No. 12. Thereafter, defendants moved to dismiss the complaint but have not responded to the motion for preliminary injunction.   See ECF No. 17.

---

[4] After the court ordered defendants to respond to the motion for preliminary injunction, the information was removed from the website.   NadiaWood.net now reads: "COMING SOON !!!!! NadiaWood.NET!!!!NadiaWoodLaw.COM!!!! Coming soon!"   Defendants' voluntary cessation of the challenged practice, however, does not moot the request for preliminary injunction.   See Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006).   As a result, the court rules on the motion for preliminary injunction.

[5] Wood alleges that "chantage" is the phonetic spelling of a Russian word meaning "blackmail."   Ver. Compl. ¶ 44.

4

**DISCUSSION**

A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. <u>Watkins Inc. v. Lewis</u>, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors in determining whether a preliminary injunction should issue: (1) the likelihood of the movant's ultimate success on the merits, (2) the threat of irreparable harm to the movant in the absence of relief, (3) the balance between the harm alleged and the harm that the relief may cause the non-moving party and (4) the public interest. <u>Dataphase Sys., Inc. v. C.L. Sys., Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). The movant bears the burden of proof concerning each factor. <u>See</u> <u>Gelco v. Coniston Partners</u>, 811 F.2d 414, 418 (8th Cir. 1987). No single factor is determinative. <u>See</u> <u>Dataphase</u>, 640 F.2d at 112-14. Instead, the court considers the particular circumstances of each case, remembering that the primary question is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." <u>Id.</u> at 113.

I.   **Likelihood of Success on the Merits**

The court first considers the "most significant" <u>Dataphase</u> factor: likelihood that the movant will prevail on the merits. <u>S & M Constructors, Inc. v. Foley Co.</u>, 959 F.2d 97, 98 (8th Cir. 1992). Wood need only demonstrate that she is likely to succeed on one of

her claims in order to satisfy this prong of Dataphase.  See United Healthcare Ins. Co. v. AdvancePCS, 316 F.3d 737, 742-43 (8th Cir. 2002).

To prevail on her claim for copyright infringement, Wood "must prove ownership of a valid copyright and copying of original elements of the work."  Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 962-63 (8th Cir. 2005) (citation and internal quotation marks omitted).  The court concludes that Wood is likely to succeed on her claim for copyright infringement.

**A.   Valid Copyright**

"To establish ownership of a valid copyright, the plaintiff must prove that the material is original, that it can be copyrighted, and that all statutory formalities have been complied with."  Thimbleberries, Inc. v. C & F Enters., Inc., 142 F. Supp. 2d 1132, 1137 (D. Minn. 2001) (citation omitted).

> To qualify for copyright protection, a work must be original to the author.  Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.  To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice.

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991) (internal citations omitted).

Wood asserts that the logo is original; that she filed a copyright application, which is currently pending before the United

States Copyright Office;[6] and that she has complied with all statutory formalities.[7]  See Ver. Compl. ¶¶ 32, 48.  At this stage in the proceedings, without the benefit of discovery or response from defendants, the court determines that Wood is likely to meet her burden of demonstrating a valid copyright.

**B.   Copying by Defendants**

Wood next must show that her logo was copied.  "Copying can be shown either by (1) direct evidence of copying, or (2) access to the copyrighted material and substantial similarity between the [allegedly-infringing] work and the copyrighted work."  Warner Bros. Entm't, Inc. v. X One X Prods., 644 F.3d 584, 595 (8th Cir. 2011) (citation omitted).  Wood presents no direct evidence of copying and must rely on establishing access and substantial similarity.

"Where the similarity between the original and the copy is so striking as to preclude any possibility of independent creation,

---

[6] The copyright application is pending as application number 1-948933351.  Ver. Compl. ¶ 32.

[7] There is disagreement among the courts as to whether a validly-issued copyright - or merely a finalized copyright application - is required to institute a copyright infringement action.  Compare Apple Barrel Prods., Inc. v. Beard, 730 F.2d 384, 386-87 (5th Cir. 1984) ("One need only prove payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of a registration application." (citation omitted)), with M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1488 (11th Cir. 1990) (requiring completed registration).  The Eighth Circuit has not addressed this issue.  See TVI, Inc. v. INFOSoft Techs., Inc., No. 4:06CV00697JCH, 2006 WL 2850356, at *3 (E.D. Mo. Sept. 29, 2006).

access may be inferred." <u>Nelson v. PRN Prods., Inc.</u>, 873 F.2d 1141, 1142 n.3 (8th Cir. 1989) (citation omitted). The Eighth Circuit endorses a two-step approach in determining substantial similarity. First, an "extrinsic" analysis is performed to determine whether the general idea of the two works is substantially similar. <u>Moore v. Columbia Pictures Indus., Inc.</u>, 972 F.2d 939, 945 (8th Cir. 1992). That analysis becomes cursory where, as here, the similarities between the two logos are obvious. "In cases such as this, where the extrinsic elements ... are unquestionably similar, the court must then perform an intrinsic analysis to determine whether there is similarity of expression." <u>Thimbleberries</u>, 142 F. Supp. 2d at 1139 (citation and internal quotation marks omitted). The intrinsic analysis depends "on the response of the ordinary, reasonable person to the forms of expression." <u>Hartman v. Hallmark Cards, Inc.</u>, 833 F.2d 117, 120 (8th Cir. 1987) (citation omitted).

In a case such as this - where the allegedly-infringing logo is *identical* to the copyrighted logo - the court determines that a reasonable observer could easily recognize the similarities as striking. As a result, Wood is likely to show that defendants copied her logo. In sum, Wood has shown a likelihood of success on the merits of her copyright claim. Therefore, this <u>Dataphase</u> factor weighs in favor of injunctive relief.

## II. Irreparable Harm

To establish irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996) (per curiam). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009).

Wood argues that her professional reputation is being irreparably harmed by the inclusion of her professional logo on the websites. "Loss of intangible assets such as reputation and goodwill can constitute irreparable injury. Harm to reputation and goodwill is difficult, if not impossible, to quantify in terms of dollars." Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 805 (8th Cir. 2003) (citations and internal quotation marks omitted). As a result, Wood has demonstrated a likelihood of irreparable harm, and this Dataphase factor weighs in favor of injunctive relief.

## III. Balance of Harms

Under this factor, "a court should flexibly weigh the case's particular circumstances to determine whether ... justice requires the court to intervene to preserve the status quo." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998) (citation

and internal quotation marks omitted).  As already explained, Wood has established a likelihood of irreparable harm.  Defendants have not responded, and the court discerns no apparent harm from temporarily redirecting the web addresses with infringing material. As a result, the balance of harms favors Wood and militates in favor of injunctive relief.

## IV. Public Interest

"The fourth factor to be considered in determining whether a preliminary injunction should issue is the public interest.  The public interest is served in protecting the holders of valid copyrights from infringing activity ...."  Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1039, 1042 (8th Cir. 2003) (citation omitted).  As already explained, Wood has demonstrated a likelihood of success on her copyright infringement claim.  As a result, this factor weighs in favor of injunctive relief. Therefore, based upon a balancing of the Dataphase factors, a preliminary injunction is warranted.

## V. Bond Amount

Under Rule 65(c), the court is required to determine the amount of security that the preliminary injunction movant must give "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Given the likelihood that Wood will succeed on the merits of her copyright infringement claim, and the minimal chance that defendants will suffer

significant cognizable harm from the issuance of an injunction, the court concludes that a nominal bond of $1,000.00 is appropriate in this case.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's motion for preliminary injunction [ECF No. 2] is granted.

2.    The defendants, their officers, directors, employees, agents, subsidiaries, distributors and all persons in active concert or participation with the defendants, having notice of this preliminary injunction, shall immediately cease display of any websites displaying protected logos, service marks or trade dress, or substantially-similar marks, logos and trade dress.

3.    GoDaddy.com, as the registrar of record, shall institute immediate domain name forwarding from Subject Domain Names (NadiaWood.net, NadiaWoodLaw.com, NadiaWoodBlackmailer.com) to http://www.NadiaWood.com; and place the domains into REGISTRY-HOLD status to prevent future modification or deletion of the Subject Domain Names by either Defendants or Registrar.

    4.    The preliminary injunction will not take effect until plaintiff posts a bond or provides other security in the amount of $1,000.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 23, 2013

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court